**FILED UNDER SEAL**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FILED
DEC 07 2009
CLERK'S OFFICE
U.S. DISTRICT COURT
EASTERN MICHIGAN

**FILED UNDER SEAL**

UNITED STATES OF AMERICA,

CRIMINAL NO. 09-20025

vs.

HON. AVERN COHN

D-4   SAMUEL L. RIDDLE, JR.,

      Defendant.
_____/

### UNITED STATES' MOTION FOR A PROTECTIVE ORDER TO PRECLUDE EXTRAJUDICIAL STATEMENTS BY PARTIES OR THEIR COUNSEL

The United States of America, by and through its attorneys, Robert Cares and David A. Gardey, Assistant United States Attorneys, for the Eastern District of Michigan, moves for a protective order precluding extrajudicial statements about the case by parties or their counsel which a reasonable person would believe could be publicly disseminated.

Since approximately June 1, 2009, Mr. Riddle has been making statements in the media, including newspaper, television, radio, and the internet, in the Detroit area, all of which seek to undermine the validity of the government's investigation and prosecution of him, as well as this Court's fairness. In any prosecution, wide dissemination of extrajudicial comments by a party threatens the basic tenet that criminal trials should be decided by impartial jurors who know as little as possible about the case. Gentile v. State Bar of Nevada, 501 U.S. 1030, 1070 (1990). In this prosecution, Mr. Riddle is using his statements to the media and over the internet to broadcast claims that are inflammatory, false, unsupported by any shred of actual evidence, and are in any event inadmissible at trial. Against the backdrop of his interviews and numerous statements to print, internet, radio, and

television, Mr. Riddle's statements to the media threaten the fair trial rights of the government. The Court has an affirmative Constitutional duty to guard against prejudicial pretrial publicity. Accordingly, the government respectfully requests that the Court enter a protective order that precludes extrajudicial statements about the merits of the case by the parties or their attorneys.

The government sought and was denied concurrence in this motion by defendant Riddle.

For these reasons, which are supported by the attached brief, the United States asks that its motion to preclude extrajudicial statements be granted. A copy of a proposed order will be submitted contemporaneously to the Court.

                                      Respectfully submitted,

                                      TERRENCE BERG
                                      United States Attorney

                                      ROBERT CARES
                                      Assistant U.S. Attorney

                                      DAVID A. GARDEY
                                      U.S. Department of Justice
                                      211 West Fort Street, Suite 2001
                                      Detroit, Michigan  48226-3211
                                      Telephone: (313) 226-9591

DATED: December 4, 2009

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FILED UNDER SEAL

UNITED STATES OF AMERICA,

CRIMINAL NO. 09-20025

vs.

HON. AVERN COHN

D-4    SAMUEL L. RIDDLE, JR.,

Defendant.
_____/

BRIEF IN SUPPORT OF UNITED STATES' MOTION FOR A
PROTECTIVE ORDER TO PRECLUDE EXTRAJUDICIAL
STATEMENTS BY PARTIES OR THEIR COUNSEL

TERRENCE BERG
United States Attorney

ROBERT CARES
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9736
E-Mail: robert.cares@usdoj.gov

DAVID A. GARDEY (P48990)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9591
E-Mail: David.Gardey@usdoj.gov

# TABLE OF CONTENTS

CONTROLLING AUTHORITIES ........................................... iii

STATEMENT OF ISSUES ................................................. iv

I.   INTRODUCTION ................................................... 1

II.  ARGUMENT ....................................................... 1

    A.   Mr. Riddle's Extrajudicial Statements Threaten to Prejudice the Fair Trial Rights of the Government ............... 2

        1.   Mr. Riddle's Efforts to Color the Jury's Perception Of This Case ............................ 2

        2.   There Is A Substantial Likelihood That Mr. Riddle's Extrajudicial Statements May Prejudice Himself and A Defendant In A Related Case ............. 5

        3.   Mr. Riddle's Extrajudicial Statements May Prejudice the Government ............................ 6

    B.   The Court Has An Affirmative Constitutional Duty to Impose a Protective Order to Protect the Fair Trial Rights of Mr. Riddle's Co-Defendant and the Government ............... 7

    C.   The Proposed Protective Order Is Sufficiently Narrowly Tailored ............................. 9

III. CONCLUSION ..................................................... 10

CERTIFICATE OF SERVICE ............................................. 11

## TABLE OF CONTROLLING AUTHORITIES

Gentile v. Nevada, 501 U.S. 1030 (1991)

Shepard v. Maxwell, 384 U.S. 333 (1966)

United States v. Brown, 218 F.3d 415 (5th Cir. 2000)

United States v. Fieger, 2008 WL 659767 (E.D. Mich. March 11, 2008)

United States v. Koubriti, 307 F. Supp.2d 891 (E.D. Mich. 2004)

## STATEMENT OF ISSUES

    The issues presented by this motion are as follows:

1. Whether Mr. Riddle's extrajudicial statements - including statements to newspapers, television, radio, and the internet - are substantially likely to materially prejudice the fair trial rights of the government.

2. Whether a protective order proscribing extrajudicial statements, as further described herein, is sufficiently narrowly tailored to constitute a permissible prior restraint on the parties' speech.

I.  **INTRODUCTION**

Since learning of the government's intent to seek an Indictment against him in the spring of 2009, defendant Samuel L. Riddle, Jr. has inundated the Detroit area with claims about the nature and conduct of the government's investigation and prosecution which are not only false, they are not admissible before the jury. He has made extrajudicial statements to the print, radio, and television news media, as well as statements over the internet. He has repeatedly given interviews with members of the news media about the investigation and prosecution. His efforts threaten to prejudice the jury pool and affect the right to a fair trial of the government. Accordingly, the government requests that the Court enter a protective order preventing all parties to this litigation from making extrajudicial statements about this case that a reasonable person would believe could be publicly disseminated.

II.  **ARGUMENT**

"[T]he theory upon which our criminal justice system is founded [is that] the outcome of a criminal trial is to be decided by impartial jurors, who know as little as possible of the case, based on material admitted into evidence before them in a court proceeding. Extrajudicial comments on, or discussion of, evidence which might never be admitted at trial . . . obviously threaten to undermine this basic tenet." Gentile v. State Bar of Nevada, 501 U.S. 1030, 1070 (1991).

For more than six months, Mr. Riddle has sustained a campaign aimed at convincing the venire pool that his prosecution is politically motivated and without basis in fact. Not only does this campaign undermine the tenet that potential jurors should know as little as possible about a case, it also puts before the venire pool arguments and claims that could never be admitted at trial. For that reason, this campaign must stop.

1

    A.    **Mr. Riddle's Extrajudicial Statements Threaten to Prejudice the Fair Trial Rights of the Government**

        1.    **Mr. Riddle's Efforts to Color the Jury's Perception Of This Case**

Since approximately June 2009, Mr. Riddle began making extrajudicial statements regarding this investigation and prosecution. For example, in a June 29, 2009 article in The Detroit Free Press, Mr. Riddle made extensive and detailed statements to newspaper reporters about payments that Mr. Riddle received from a Detroit businessman, as well as other deals that are the subject of the Indictment in this case or that are part of the relevant evidence in this case. The Detroit Free Press, "Ex-Aide: Conyers Took Cash, Jewelry, Riddle Details Questionable Transactions She Brokered," June 29, 2009 at 1A.

In June and July 2009, in the time leading up to the unsealing of the Indictment against him, Mr. Riddle granted extensive interviews with television and radio reporters where he made detailed statements about the government's investigation. For example, on July 1, 2009, Mr. Riddle appeared for an interview with Paul W. Smith on the radio on WJR-AM. During that interview, Mr. Riddle criticized the government and the FBI for failing to "go after the enablers of corruption, like the Carlyle Synagro group," and instead for pursuing "salacious" allegations. In a different radio interview conducted on June 17, 2009, Mr. Riddle also criticized the government's prosecution saying that "you also have to understand the motivations of the Department of Justice. You know this is a department of justice that is one of the most political in the nation." The Mitch Albom Show, WJR-AM, June 17, 2009. Mr. Riddle also granted interviews with television reporters where he made detailed statements commenting on the investigation of him. See, e.g., "Let It Rip," Interview of Samuel Riddle by Huel Perkins, WJBK-Fox 2, June 18, 2009 (Riddle denying

being a go-between or bagman on the Synagro deal; stating that prosecution of him is political in nature with Congresswoman Carolyn Kilpatrick directing the prosecution based on plea offers).

Mr. Riddle has made other statements to the media claiming that prosecutions by the U.S. Attorney's Office in this district are based on political calculations. For example, on July 1, 2009, Mr. Riddle was quoted in The Detroit Free Press saying that "'I'm firmly convinced that there are elements in the U.S. Attorney's Office who would love to make a case against anyone whose last name is Conyers, if for no other reason than to embarrass the chairman of the U.S. House Judiciary Committee,' Riddle said. He added: 'Councilwoman Conyers can do that on her own without the assistance of the FBI. She's demonstrated that time and time again.'" Id.

Since the indictment against him was unsealed on July 15, 2009, Mr. Riddle has continued to make extrajudicial statements that falsely characterize the prosecution. For example, when the Indictment was unsealed, Mr. Riddle stated, "'I am not going to be the fall guy.'" The Detroit News, "Riddle Vows 'Tooth and Nail' Court Fight," July 16, 2009 at 17A. Mr. Riddle also stated, "'my level of behavior did not reach that of breaking the law.'" Id. According the article, "Riddle unleashed a diatribe against federal authorities and Synagro Technologies Inc." Id. "'The culture of corruption will go nowhere until they go after the enablers of corruption like Carlyle-Synagro Group,' Riddle said." Id.; see also Interview of Samuel Riddle by Steve Wilson, WXYZ-TV, July 15, 2009 ("I believe in my heart that as an independent consultant that my behavior has not breached or broken the law. I believe what I have done is no different than aggressive lobbying by consultants and lobbyists all over this nation that don't break the law.").

Mr. Riddle has not stopped making extrajudicial statements in the intervening months since his Indictment. For example, on August 6, 2009, Mr. Riddle made statements to newspaper reporters. Mr. Riddle stated: "I've never bribed Lattimore . . . just because (Lattimore) thinks he's guilty of something does not diminish my innocence." The Detroit News, "Lattimore Pleads Guilty, Loses Seat," August 6, 2009. In response to a question as to whether he ever paid Lattimore, Mr. Riddle stated that "he 'helped with some community projects.'" Id.

Mr. Riddle also has made statements about the case disseminated over the internet. For example, on December 1, 2009, Mr. Riddle stated over the internet: "Going To Fed Court Today. Drop Dead Date For Me To Say. 'No Deal' & Go To Trial. Hate This Crap But Gotta Deal With It." Mr. Riddle also stated in response to the Court's request that Mr. Riddle limit his extrajudicial comments: "Thank God the U.S. Constitution doesn't shut its doors south of 8 Mile." Also in response to the Court's request about making extrajudicial comments, Mr. Riddle posted the following statement over the internet: "They Stop Me From Tweeting -- You Are Next -- Tweet On KMA." In the vernacular of the internet, "KMA" means "Kiss My Ass." Also over the internet, Mr. Riddle posted: "I will Go Straight To Jail Before I Get Off This Keyboard -- If They Stop Me from Tweeting Or FaceBooking You Are Next." Obviously, these statements would lead jurors to conclude that the Court is unfairly attempting to restrict the rights of Mr. Riddle and to deprive him of a fair trial, besides spreading contempt for the Court.

Most recently, Mr. Riddle attacked the Court in statements made to The Detroit News. In a December 3, 2009 story, the newspaper reported that Mr. Riddle stated: "'It's not fair,' Riddle said Wednesday. 'He's giving me less time to prepare for the case than he is giving

4

to sentence (former Detroit City Councilwoman) Monica Conyers,' a co-defendant in the case. Conyers pleaded guilty this summer and awaits sentencing." Mr. Riddle added: "'I may well be being denied the right to effective counsel in terms of case preparation.'" A perspective juror reading Mr. Riddle's statement would be left with the impression that any trial against Mr. Riddle would be unfair because of the purportedly unfair lack of time allowed to Mr. Riddle and his defense team for trial preparation.

In making extrajudicial comments, Mr. Riddle ignores the fact that "'Legal trials are not like elections, to be won through the use of the meeting-hall, the radio, and the newspaper.'" Gentile, 501 U.S. at 1070 (quoting Bridges v. California, 314 U.S. 242, 271 (1941)).

### 2. There Is A Substantial Likelihood That Mr. Riddle's Extrajudicial Statements May Prejudice Himself and A Defendant In A Related Case

The beneficiaries of a court's efforts to limit extrajudicial comments "include not only the defendant in a given trial, but other defendants as well, such as co-defendants in the same case or defendants in related cases . . . whose fair trial rights might be prejudiced by the extrajudicial statements of other trial participants." United States v. Brown, 218 F.3d 415, 424 (5th Cir. 2000).

While Mr. Riddle attempts to cast the government in a negative light, skeptical viewers might reject Mr. Riddle's self-serving comments and develop a view that is prejudiced against him and his co-defendant in a related case, Mary Waters. For example, after the two Indictments were unsealed against Mr. Riddle, Mr. Riddle's attorney asserted that "Riddle believes the only thing that Mary Waters did wrong was to be with him and that the government is punishing her for that very reason." The Detroit Free Press, "Lawyer:

Riddle Ready to Fight," July 16, 2009 at 8A. This echoed statements made by Mr. Riddle to newspaper reporters. The Detroit Free Press, "FBI Investigation Turns to Southfield Store's Expansion," June 5, 2009 ("Riddle also defended Waters, saying, 'Mary's only crime is knowing me.'"). In the end, all parties, including Mr. Riddle and Ms. Waters, stand to lose if members of the jury decide the case on statements or claims other than those admitted into evidence. Ms. Waters' right to a fair trial by impartial jurors outweighs Mr. Riddle's right to criticize the prosecution against him now that he is a party to the litigation. See Gentile, 501 U.S. at 1075 (holding that few, if any, constitutional rights are more important than the right to be tried by an impartial jury); Seattle Times Co. v. Rhinehart, 467 U.S. 20, 32-33 n. 18 (1984) ("Although litigants do not surrender their First Amendment rights at the courthouse door, those rights may be subordinated to other interests that arise in this setting."). Accordingly, the Court should grant a protective order.

### 3. Mr. Riddle's Extrajudicial Statements May Prejudice the Government

The government, as the representative of the people, has a right to a fair and impartial trial. United States v. Ford, 830 F.2d 596, 603 (6th Cir. 1987) (Krupansky, J. concurring). "The public has an overriding interest that justice be done in a controversy between the government and individuals and has the right to demand and expect 'fair trials designed to end in just judgments.'" United States v. Tijerina, 412 F.2d 661, 666 (10th Cir. 1969) (quoting Wade v. Hunter, 336 U.S. 684, 689 (1949)).

The claims made by Mr. Riddle are politically charged. Through his statements, Mr. Riddle claims that the prosecutors are motivated by politics and by protecting the rich and well connected, and that the Court is unfairly forcing him to trial before he is ready. If there

were any truth to them, the government would be just as offended as Mr. Riddle claims to be. Of course, the facts surrounding this prosecution contravene his self-serving claims. Members of the venire pool, however, do not have access to the pleadings, exhibits, and oral arguments that refute Mr. Riddle's claims. Nor will the eventual jurors ever have access to the facts concerning these claims. Mr. Riddle is therefore placing allegations before the eventual jury to which the jury should never be exposed, and under circumstances when the jury will never have the ability fairly to weigh the reliability of those allegations. Rather, all they see, on a repeated basis, are the statements of Mr. Riddle on television, radio, in newspapers, and over the internet.

There is a real danger that potential jurors, who have heard only Mr. Riddle's claims during the proceeding six months, will have difficulty setting aside those claims and deciding this case based upon the evidence at trial. Only a protective order entered now can help minimize this danger, especially in the weeks that remain before a jury is empaneled.

**B.  The Court Has An Affirmative Constitutional Duty to Impose a Protective Order to Protect the Fair Trial Rights of Mr. Riddle's Co-Defendant and the Government**

Trial courts have "an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity." Gannett Co. v. DePasquale, 443 U.S. 368 (1979); see also Chandler v. Florida, 449 U.S. 560 (1981) ("Trial courts must be especially vigilant to guard against any impairment of the defendant's right to a verdict based solely upon the evidence and the relevant law."); Sheppard v. Maxwell, 384 U.S. 333, 363 (1966) (holding that "The Court must take such steps by rule and regulation that will protect their processes from prejudicial outside interferences. Neither prosecutors, counsel for defense, the accused, [or] witnesses . . . should be permitted to frustrate its function.").

7

This Court should not allow Mr. Riddle's extrajudicial statements to continue in the hopes of identifying and remedying any prejudice at the trial through voir dire, sequestration, change of venue, or other tools. "[T]he cure lies in those remedial measures that will prevent the prejudice at its inception." Sheppard, 384 U.S. at 363. To allow the parties to engage in extrajudicial comments, in the hope that any prejudice can be identified and neutralized at trial, "may be tantamount to closing the barn door after the horses are out." United States v. Koubriti, 307 F. Supp.2d 891, 900 (E.D. Mich. 2004). "Extensive *voir dire* may not be able to filter out all of the effects of pretrial publicity," Gentile, 501 U.S. 1030, 1075, especially when the pretrial publicity has been as persistent as have Mr. Riddle's efforts here.

The speech of a defendant, as well as his attorneys, may be limited upon a finding that his extrajudicial statements are substantially likely to materially prejudice fair trial rights. Koubriti, 307 F. Supp.2d at 899; see also United States v. Brown, 218 F.3d 415, 423 (5th Cir. 2000) (same as to protective order limiting speech by defendants); In re Russell, 726 F.2d 1007, 1010-1011 (4th Cir. 1984) (same as to protective order limiting speech by witnesses); United States v. Calabrese, 2007 WL 2075630 (N.D. Ill. 2007) (same as to protective order limiting speech by all parties). Indeed, the Supreme Court has repeatedly held that trial courts may limit the speech of parties to a litigation "where necessary to ensure a fair trial." Gentile, 501 U.S. at 1073; see also United States v. Sheppard, 384 U.S. 333, 362 (1966) (the "trial court might well [proscribe] extrajudicial statements by any lawyer, party, witness or court official . . . concerning the merits of the case.").

Based on his claimed experience as a public relations flack, Mr. Riddle has made an aggressive effort to influence the opinions of prospective jurors by attacking the motivations of the prosecutors and the fairness of the Court. If Mr. Riddle is permitted to continue his

efforts, that is tantamount to holding that there are no limits on a litigant's ability to distort the trial process, so long as the distortion takes place outside the courtroom walls when trial is not in session. The First Amendment cannot and does not compel such a result.

### C. The Proposed Protective Order Is Sufficiently Narrowly Tailored

Submitted contemporaneously with this motion is a proposed protective order. The proposed order does not prevent Mr. Riddle or others from engaging in normal conversation with any person. Rather, it prohibits any party from making "any extrajudicial statement about this case which a reasonable person would believe could be publicly disseminated." This proposed order is narrowly tailored. It allows parties to disseminate information regarding items that are part of the public record, but it limits such dissemination to bare facts as opposed to opinions, questions, or commentary. Compare United States v. Fieger, Case 2008 WL 659767 (E.D. Mich. March 11, 2008) (similar protective order by Judge Borman); United States v. Calabrese, 2007 WL 2075630 (N.D. Ill. 2007) (similar protective order); see also Koubriti, 307 F. Supp.2d at 898 (protective order is narrowly tailored because it does not prohibit public disclosure of information, or comment upon, matters which have been disclosed in a public filing, hearing or other proceeding).

A necessary component of any protective order, including the proposed order submitted with this motion, is an explanation of why the less burdensome alternatives of voir dire, jury selection, sequestration, or a change of venue are insufficient. Ford, 830 F.2d at 603 (Krupansky, J. concurring). As explained by the Supreme Court, "Extensive *voir dire* may not be able to filter out all of the effects of pretrial publicity." Gentile, 501 U.S. 1030, 1075. Moreover, a change of venue would be plainly insufficient because Mr. Riddle could

simply make extrajudicial statements in the new jurisdiction. Compare Gentile, 501 U.S. at 1075 (noting that even change of venue might be insufficient in today's era of widespread media coverage). Sequestration and other remedies are insufficient both because of the considerable costs they impose on the Court and the jury as well as the fact that the prejudice will already have attached by the time those measures are employed. In short, only a protective order is sufficient to protect the fair trial rights of the parties.

### III. CONCLUSION

"Few, if any, interests under the Constitution are more fundamental than the right to a fair trial by impartial jurors, and an outcome affected by extrajudicial statements would violate that fundamental right." Gentile, 501 U.S. at 1075. For that reason, the government respectfully requests that the Court grant its motion for a protective order and preclude Mr. Riddle or any other party or attorney to this proceeding from making extrajudicial statements.

Respectfully submitted,

TERRENCE BERG
United States Attorney

ROBERT CARES
Assistant U.S. Attorney

DAVID A. GARDEY
U.S. Department of Justice
211 West Fort Street, Suite 2001
Detroit, Michigan 48226-3211
Telephone: (313) 226-9591

DATED: December 4, 2009

10

## CERTIFICATE OF SERVICE

I hereby certify that on  December 4, 2009, I provided a copy to the following attorneys by way of facsimile:

John Minnock, Esq.

Edward Wishnow, Esq.

DAVID A. GARDEY
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
Phone:  (313) 226-9591
E-Mail:  David.Gardey@usdoj.gov
Bar No. P48990