UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

CRIMINAL NO. 09-20025

vs.

HON. AVERN COHN

D-4   SAMUEL L. RIDDLE, JR.,

Defendant.
_____/

RESPONSE OF THE UNITED STATES TO
DEFENDANT'S MOTION TO ADJOURN TRIAL

The United States of America, through the undersigned Assistant United States Attorneys, hereby responds as follows to defendant Samuel L. Riddle, Jr.'s Motion to Adjourn Trial:

Defendant Riddle seeks an adjournment of the trial date for an unspecified period of time in order to better prepare for trial given the complexity of the case. The government contends that an additional adjournment is not necessary to assure due process, effective representation, or a fair trial for the defendant. However, an additional continuance of no more than two weeks would help eliminate any possible claim by the defendant of possible prejudice. At the same time, this short continuance would serve the public interest by ensuring an expeditious trial in a matter of public concern.

I.   BACKGROUND

The development of this case has extended over a lengthy period of time. During that time, the Court has gone out of its way to ensure that the defendant has been accorded

excellent, experienced, and effective counsel to represent him.

### A. Pre-Indictment Representation and Discovery

In April 2009, the government notified the defendant that it intended to seek an indictment against him. At that time, the defendant was represented by private attorneys retained by the defendant. These attorneys withdrew from the matter. In their place, a Magistrate Judge appointed attorney David Steingold to represent the defendant. From May through June 2009, Mr. Riddle and his attorneys became acquainted with the evidence against him, having heard many of the key intercepted calls which incriminate him. The Grand Jury indicted Mr. Riddle on July 15, 2009.

### B. Post-Indictment Representation and Discovery

After Mr. Riddle was arraigned, the government produced discovery materials to his counsel, Mr. Steingold. The materials provided by the government far exceeded the materials that are required by law. For example, even though Jencks material need not be produced by the government until a witness has actually testified at trial, the government provided such material, including grand jury transcripts, as part of its initial production of discovery. In addition, although not required by statute or rule, the government produced all of the agent summaries of the intercepted calls in the investigation in order to assist the defense in identifying and reviewing calls from the wiretaps.[1]

On July 27, 2009, the parties met with the Court for a status conference. On August 3, 2009, given the complexity of the case and the amount of discovery, the Court issued an

---

[1] These summaries were recorded on an external hard drive given to Mr. Steingold. The hard drive also contained the recorded phone conversations that were intercepted.

order granting the defendant's request for more time, and it adjourned the previously set trial date of September 21, 2009 until January 5, 2010.

On November 3, 2009, the Court allowed Mr. Steingold to withdraw from the case. The Court found that this withdrawal was precipitated by the actions of Mr. Riddle, who had filed, on his own, a document with the Court purporting to add attorney Richard Convertino as Mr. Riddle's counsel.

On November 4, 2009, the Court then appointed attorney John Minock to represent Mr. Riddle. The Court then appointed an additional attorney, Edward Wishnow, to also represent Mr. Riddle. At the November 30, 2009 status conference, counsel for Mr. Riddle orally requested an adjournment of the January 5, 2010 trial date from the Court. The Court denied the request in part. Although jury selection is still set to begin on January 5, 2010, in that jury questionnaires will be distributed to prospective jurors on that date, the Court indicated that the actual trial would not begin until January 19, 2010, thereby giving the defense an additional two weeks to prepare for trial.

At a subsequent status conference on December 2, 2009, counsel for Riddle again raised the issue of the number of intercepted telephone calls as grounds for an adjournment. The Court then ordered the government to organize the agent summaries of the intercepted telephone calls by making separate sets of written summaries for various persons who had been parties to the calls with Riddle, in order to assist the defense in reviewing and identifying relevant calls. The government complied with this request and provided the defense with agent summaries organized in the format directed by the Court.

### C. Pretrial Publicity

As set forth in detail in the government's Motion for a Protective Order, Mr. Riddle has made numerous public statements in an apparent effort to influence public opinion regarding the case against him. Even in spite of the Court's Protective Order granted pursuant to the government's motion, Mr. Riddle has granted newspaper and television interviews, and he has continued to post comments about the case on Facebook and Twitter. Given the Court's concern regarding pretrial publicity, the actions of Mr. Riddle caution against the granting of a lengthy adjournment because of the danger that Mr. Riddle will continue his running commentary on the case and create further difficulties in the jury selection process.

## II. ARGUMENT

Whether a court should grant a continuance of trial is left to the sound discretion of the court depending on the particular facts and circumstances. See, e.g., United States v. King, 127 F.3d 483, 486-87 (6th Cir. 1997). The Sixth Circuit has held that "'[t]he denial of a defendant's motion for continuance 'amounts to a constitutional violation only if there is an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay.'" King, 127 F.3d at 486-87 (quoting United States v. Gallo, 763 F.2d 1504, 1523 (6th Cir. 1985)). In addition, in order "[t]o demonstrate reversible error, the defendant must show that the denial resulted in actual prejudice to his defense." Id. at 487 (relying on Gallo, 763 F.2d at 1523). Actual prejudice is demonstrated by showing that a continuance would have made relevant witnesses available or added something to the

defense. King, 127 F.3d at 487. "When claims of insufficient time for preparation are advanced, this court will examine the totality of the circumstances." United States v. Medina, 992 F.2d 573, 581 (6th Cir. 1993).

The decision in Broom v. Mitchell, 441 F.3d 392 (6th Cir. 2006) illustrates the application of these principles in a case involving a substitution of counsel. Broom was a death penalty case where the trial was set to begin in August 1985. In July 1985, the court appointed new counsel, and it moved the trial date one month to September 1985. New counsel sought an additional adjournment in order to properly prepare a mitigation case to oppose application of the death penalty. The trial court denied the request, the defendant was convicted, and the jury voted for the death penalty. In such circumstances, the Sixth Circuit found that there was no denial of due process based on the trial court's refusal to give new counsel more time to prepare. In other cases involving a change in attorneys in the lead up to a trial, the Sixth Circuit has found adjournments unnecessary because newly appointed counsel "had access to the fruits of appointed counsel's earlier preparation efforts." United States v. Martin, 740 F.2d 1352, 1361 (6th Cir. 1984); see United States v. Peck, 62 Fed. Appx. 561, 566 (6th Cir. 2003).

In this case, although there is a substantial amount of material, the defense will have had six months to prepare for trial, from July 2009 through January 19, 2010. In addition, Mr. Riddle and his attorneys were on notice of the government's investigation and the nature of its case against him since April 2009. During meetings between the government, Mr. Riddle, and his attorneys, the government played extensive excerpts from the intercepted

calls giving additional notice to the defense of the government's case. The Court already granted a continuance from September 21, 2009 to January 5, 2010. In addition, the Court provided that the presentation of evidence would not begin until January 19, 2010, thereby giving the defense some additional time in which to prepare. The Court also directed the government to organize the intercepted calls in a manner to assist the defense attorneys in their review. Even more significant is the fact that the Court appointed a second attorney for Mr. Riddle on the case.

     In support of his motion, the defendant relies upon the sheer number of calls on the wiretaps. The defendant cites to 21,000 as being the number of calls intercepted on his telephone. While there is no dispute that the number of intercepted calls in this case is extensive, the citation to 21,000 calls does not provide a complete picture of the nature of this evidence. As an initial matter, the government only intends to introduce approximately 130 telephone calls at trial. The 21,000 calls do not in any way represent the number of calls wherein substantive conversations occurred. For example, the 21,000 calls include calls that were never connected, hang-ups, voicemails, calls occurring after hours that were not recorded or monitored, duplicate calls, and calls where the FBI system was down and the calls were not recorded or monitored. As a result, although these various types of calls would be included in the total number of calls, there would actually be no content for Riddle's attorneys to review for a significant portion of the calls. For the calls actually containing substantive content, the government has supplied the summaries (electronically on the external hard drive) of all the calls as prepared by the FBI agents who were monitoring

the calls during the wiretap. Even if the agents who monitored the calls and wrote the summaries were unaware at the time of the significance of the calls, the defense can use information concerning the date and time of the call, the participants, and the existing summary information to locate and review relevant calls.

Finally, given that the vast majority of the intercepted calls at issue here occurred over the defendant's own telephone, it is apparent that the defendant himself should be a great tool for his attorneys in identifying relevant calls based on his own knowledge of the facts underlying the transactions at issue. The defendant himself has had access to all of the calls for several months. Presumably, he has been listening to the calls even when he was represented by other counsel. Knowing the charges against him and the expected testimony of the witnesses, Mr. Riddle himself should have covered much, if not all, of the ground which defense counsel now is reviewing. He presumably would have brought to the attention of his attorneys all calls that might have some relevance so that they could be further reviewed. It is not as though current counsel is starting from scratch. The argument for adjournment in this case is similar, in some significant respects, to the defendant's argument for continuance in United States v. Vincent, 416 F.3d 593 (7th Cir. 2005). In that case, the defendant, an attorney, represented himself at trial.[2] His argument for an additional continuance, rejected by the district court, was based primarily on the complexity of the case. As stated by the Seventh Circuit, in ruling that the district court did not abuse its discretion

---

[2]It is the understanding of the government that Mr. Riddle has his law degree, but has never practiced law. Nevertheless, a review of the telephone calls is a factual investigation, as opposed to legal analysis.

in denying defendant's motion for a continuance:

> [The defendant] relies heavily on the complexity of the case to support his argument that the district court should have continued the trial. The case was somewhat complex, but Vincent's business generated most of the documents at issue. Defendant therefore was familiar with much of the evidence from the outset. Moreover, the government made discovery available promptly, and actively cooperated with Vincent's efforts to prepare for trial.

Id. at 599.

Another factor cautioning against a prolonged adjournment in this case are the actions of Mr. Riddle. Mr. Riddle's actions arguably resulted in the withdrawal of his first appointed attorney Mr. Steingold. The Sixth Circuit has found that where a defendant himself contributes to the withdrawal of counsel, the defendant cannot then demand a continuance in order to cure the problem he himself created. See United States v. Crawford, 60 Fed. Appx. 520, 526-27 (6th Cir. 2003). In Crawford, the Sixth Circuit held that the district court had not abused its discretion in denying defense counsel's request for an adjournment given the actions of the defendant in contributing to his own counsel's lack of preparedness. Id. In the same way, Mr. Riddle has contributed to the problems faced by his attorneys by causing or contributing to the withdrawal of his prior attorney. Finally, Mr. Riddle's own campaign in the media has caused the Court concern regarding the possibility of a tainted jury pool. The granting of a long continuance will only contribute to the danger that Mr. Riddle will seek to influence the jury pool.

Under the circumstances presented by this case and given the actions already taken by the Court, a lengthy continuance is not necessary. In fact, given the record, a continuance of any length is not necessary to assure due process, adequate representation, or a fair trial.

There is no indication that the Court has engaged in an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay. That being said, given the admitted complexity of this case, a short two-week continuance would assist in eliminating any possible post-trial claim of prejudice by the defendant. At the same time, a short continuance would allow this matter to be expeditiously resolved given the public interest. Finally, given the projected length of the trial, a two-week continuance would not interfere with other matters that the Court has already scheduled in March 2010.[3] For these reasons, the government urges the Court to grant the defendant's motion, but only to the limited degree of a short continuance.

Respectfully submitted,

s/   Robert P. Cares
**ROBERT P. CARES** (P28888)
Assistant United States Attorney
211 W. Fort
Detroit, MI 48226
(313) 226-9736
robert.cares@usdoj.gov

s/   David Gardey
**DAVID GARDEY** (P48990)
Assistant United States Attorney
211 W. Fort
Detroit, MI 48226
(313) 226-3265
david.gardey@usdoj.gov

Dated: December 17, 2009

---

[3] With a two-week continuance, jury selection could begin on January 19 and be completed on January 25 and 26. The presentation of evidence would begin on February 2, with the trial to be completed by sometime between February 26 or March 4.

<u>Certificate of Service</u>

  I hereby certify that, on December 17, 2009, I electronically filed the Response of the United States to Defendant's Motion to Adjourn Trial with the Clerk of the Court using the Electronic Case Management System and that notification of such filing will automatically be sent electronically to

 John Minock, Esq.
 Edward Wishnow, Esq

            <u>s/ Robert P. Cares</u>
            **ROBERT P. CARES** (P28888)
            Assistant United States Attorney
            211 W. Fort
            Detroit, MI 48226