UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**
                Plaintiff,                Case No. 09-20025-04

v

                                      Hon. Avern Cohn

**SAMUEL L. RIDDLE, JR.**,
                Defendant.
_____

**MOTION TO DISMISS, OR IN THE ALTERNATIVE TO STAY
PROCEEDINGS, AND FOR EVIDENTIARY HEARING**

      Defendant Samuel L. Riddle, Jr., by his attorneys, John Minock and Edward Wishnow, requests that his motion be granted for the following reasons:

      1.      Defendant was indicted on July 15, 2009, in a seven count indictment.

      2.      On January 4, 2010, a jury venire of one hundred was summoned to court.

      3.      The population of African-Americans in the nine counties from which the venire is drawn is about 21.5%.

      4.      In this case, the jury venire included only nine African-Americans, an under representation of over 130%.

      5.      This under representation of African-Americans on jury venires in this District has been a chronic problem for years.

      6.      The under representation of African-Americans in the jury venire is systematic and is in violation of the Sixth Amendment right to be tried by a jury which represents a fair cross section of the community. *Taylor v Louisana*, 419 US 522 (1975); *Duren v Missouri*, 439 US 357, 364 (1979); US Const, Am. VI; *Smith v Berghuis*, 543 F3d 326 (6th Cir. 2008), *cert. granted*, 130 S Ct 48 (September 30, 2009).

7.      The under representation of African-Americans in the jury venire is also a violation of the Jury Selection and Service Act, 28 U.S.C. § 1861 *et seq.* (JSSA).  Under 28 USC 1863(B)(3), the nine counties from which the jurors are drawn must be "substantially proportionally represented in the jury master wheel."  Given the results in this case, and virtually every other case tried in this District, African-Americans are substantially under represented in jury venires.

8.      The constitutional issue, but not the statutory issue, was recently addressed by Judge Victoria A. Roberts of this District in an opinion issued December 15, 2009, in a 2005 case, *United States v Alonzo Bates*, et al (Docket No. 05-81027).  That case involved a jury venire assembled in 2005 pursuant to a different Administrative Order than the one pursuant to which this venire was assembled, and the questionnaires and data examined in *Bates* are different than those in this case.  Consequently, a fresh analysis will have to be conducted in order to determine whether there are constitutional or statutory violations present here.

9.      To conduct that analysis, defense counsel will require the services of qualified investigators to review the questionnaires and an expert statistician to interpret the results.

10.     To review the results of that analysis, an evidentiary hearing is clearly necessary.  The trial of this case must be adjourned.  The issue presented is one of great constitutional significance to the integrity of the trial process in this District and is worthy of further attention.

11.     Pursuant to L.R. 7.1, undersigned counsel have sought the concurrence of government counsel in the within motion, were not able to reach counsel for the government.

**WHEREFORE**, Defendant requests that the Court (1) dismiss the indictment, or (2) stay the proceedings while the District Court corrects the problem, or (3) adjourn the case to allow investigation and analysis of the current wheel and then conduct an evidentiary hearing.

Dated:  January 9, 2010

s/John Minock (P24626)
Attorney for Defendant
339 E. Liberty, Suite 200
Ann Arbor, Michigan 48104
734-668-2200; fax 734-668-0416
jminock@cramerminock.com

s/Edward C. Wishnow (P22472
Attorney for Defendant
240 Daines St.
Birmingham, MI 48009
248-258-1991
edwishnow@aol.com

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**
                Plaintiff,                              Case No. 09-20025-04

v

                                                                      Hon. Avern Cohn

**SAMUEL L. RIDDLE, JR.**,
                Defendant.
_____

**BRIEF IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE
TO STAY PROCEEDINGS, AND FOR EVIDENTIARY HEARING**

The population of African-Americans in the nine counties from which the venire is drawn is about 21.5%. On January 4, 2010, a jury venire of one hundred was summoned to court for this case. The jury venire included only nine African-Americans, an under representation of over 130%. This under representation of African-Americans on juries in this District has been a chronic problem for years. As Judge Victoria A. Roberts said in *United States v Alonzo Bates*, et al (Docket No. 05-81027), it is impossible to ignore that:

> Wayne County residents and African-Americans are consistently and pervasively underrepresented in Detroit-Division juries, from one year, and one jury wheel, to the next.
>
> The evidence of these shortcomings is clearer and more detailed than ever before. It demonstrates an ongoing and persistent trending toward disparity, dating back to the inception of this Juror Selection Plan. *United States v Bates, supra*, Opinion, Dec. 15, 2009, document number 142, p. 35
>
>                                   * * *
>
> [R]egardless of what causes minorities to be underrepresented, it is a problem which has the potential to seriously undermine the public's perception of, and confidence in, the integrity of the jury system.
>
> Because it affords ordinary citizens the opportunity to participate in the administration of justice, the jury has long been recognized as a pillar of American society. *See* 1 Alexis de Tocqueville, *Democracy in America* 334 (Schocken 1st ed. 1961) ("The institution of the jury raises the people itself, or at least a class of

1

citizens, to the bench of judicial authority [and] invests the people, or that class of citizens, with the direction of society.") (*quoted in Powers v. Ohio*, 499 U.S. 400, 407 (1991)) (alteration in *Powers*). The jury is more than just a component of the judicial apparatus: it represents the impartial administration of justice, and safeguards against the abuse of judicial power. The perception of systematic exclusion, even if unfounded, cannot be ignored, because it weakens the legitimacy of our system of justice. *Id.* at 41.

I. **THE SYSTEMATIC UNDER REPRESENTATION OF AFRICAN-AMERICANS IN THE DISTRICT'S JURY SYSTEM VIOLATES THE SIXTH AMENDMENT RIGHT TO BE TRIED BY A JURY WHICH REPRESENTS A FAIR CROSS SECTION OF THE COMMUNITY.**

Defendant maintains the under representation of African-Americans in the jury venire is systematic and is in violation of the Sixth Amendment right to be tried by a jury which represents a fair cross section of the community. *Taylor v Louisana*, 419 US 522 (1975); *Duren v Missouri*, 439 US 357, 364 (1979); US Const, Am. VI; *Smith v Berghuis*, 543 F3d 326 (6th Cir. 2008), *cert. granted*, 130 S Ct 48 (September 30, 2009).[1]

While the constitutional issue, but not the statutory issue, was recently addressed in an opinion issued in *Bates*, that case involved a jury venire assembled pursuant to an earlier different Administrative Order than the one pursuant to which this venire was assembled, and the questionnaires and data examined in *Bates* are different than those in this case. Consequently, a fresh analysis will have to be conducted in order to determine whether there are constitutional or statutory violations present here.

To conduct that analysis, defense counsel will require the services of qualified investigators

---

[1] That this is a continuing issue in this District is ironic, because the District has tried, unsuccessfully, to deal with the issue. This District attempted to address the problem with a creative plan in 1992 to enforce proportional representation in the jury wheel. The Sixth Circuit found that part of the plan to be unconstitutional in United States v Ovalle, 136 F3d 1092 (6th Cir. 1998), so the District removed the remedial provisions of the plan but kept the rest intact.

to review the questionnaires and an expert statistician to interpret the results. 18 USC 3006A. To review the results of that analysis, an evidentiary hearing will clearly be necessary. The trial of this case must be adjourned. The issue presented is one of great constitutional significance to the integrity of the trial process in this District and is worthy of further attention.

The fair cross-section requirement of the Sixth Amendment is integral to the core principles of representative democracy and the right to a fair trial. By ensuring the community's ability to participate in the civic process and serve as a check on the powers of government, the fair cross-section requirement is critical to the integrity of the justice system. To fulfill these fundamental Sixth Amendment principles, the fair cross section requirement is critical to the integrity of the justice system, and all eligible jurors of the community must be included in jury service. When distinctive groups are underrepresented or systematically excluded, these principles are violated.

A defendant in a criminal trial has a constitutional right to a jury drawn from a venire representative of a fair cross section of the community in which the case is tried. *Taylor v Louisana*, 419 US 522 (1975); *Duren v Missouri*, 439 US 357, 364 (1979); US Const, Am. VI; *Smith v Berghuis*, 543 F3d 326 (6th Cir. 2008), *cert. granted*, 130 S Ct 48 (September 30, 2009). *Duren* established a three factor test:

> In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

If a *prima facie* violation is shown, the government is required to justify the practice, to show that a significant government interest is advanced by the process even though it results in the disproportionate exclusion of a single group.

3

There can be no question that the first Duren prong is satisfied: African-Americans constitute a cognizable group for this issue. *Jefferson v Morgan*, 962 F 2d 1185, 1189 (6th Cir. 1992). Nor can there be any question that there is substantial under representation here. The law does not set a threshold disparity beyond which discrimination can be presumed, though some courts set a 10 or 20 % rule, which is at best "a contrivance. . . based upon faulty precedent." *United States v Green*, 389 F Supp 2d 29, 55, fn. 52 (D MA, 2005). The absolute difference here is approximately 12.5%, or, in other words, 130% fewer African-Americans than there should be. Defendant maintains, particularly since the problem has been chronic in this District, that there should be a presumption sufficient to establish a *prima facie* violation. "Where African-American representation in the pool is effectively halved, and where there is evidence of systematic defects, the court should look more closely and the government should bear the burden of justification." *Green, supra*, at 55. There is certainly a sufficient disparity to raise an inference of discrimination. *Jefferson, supra*, at 1187; *Bates, supra*, at p. 21.

The only Sixth Amendment question is whether the under representation is systematic. Defendant maintains that issue can only be determined here by an examination of the questionnaires and data by investigators and a statistician, followed by an evidentiary hearing, as the decision in *Bates* demonstrated.

## II.   THE JUROR SELECTION SYSTEM IS ALSO IN VIOLATION OF THE JURY SELECTION AND SERVICE ACT.

The under representation of African-Americans in the jury venire is also a violation of the Jury Selection and Service Act, 28 U.S.C. § 1861 *et seq.* (JSSA). Under 28 USC 1863(B)(3), the nine counties from which the jurors are drawn must be "substantially proportionally represented in the jury master wheel." Given the results in this case, and virtually every other case tried in this

District, African-Americans are substantially under represented in jury venires.

The JSSA defines two obligations, a requirement of proportionality, and a requirement of substantial compliance with the provisions of the Act.

The Act requires that every district's jury plan "ensures that each county, parish, or similar political subdivision within the district or division is substantially proportionally represented in the master jury wheel for that judicial district [or] division." 28 U.S.C. § 1863(b)(3). The Act further specifies that proportional representation can be measured by using "either the number of actual voters at the last general election in each county, parish, or similar political subdivision, or the number of registered voters if registration of voters is uniformly required throughout the district or division." *Id.* Whether there is proportionality between the nine counties is an issue which will have to await further factual development.

In addition, under 28 U.S.C. § 1867(d), if the court determines that there has been a "substantial failure" to comply with the provisions of the Act, "the court shall stay the proceedings pending the selection of a petit jury in conformity with this title." The "substantial failure" to comply provision is broadly drafted, referring to all aspects of the JSSA. Defendant maintains there is a "substantial violation" of the Act, even if not a constitutional violation, based on the failure of federal officials to supplement the available jury list despite its demonstrable deficiencies. The JSSA requires that the district's jury plan "prescribe some other source or sources of names" in addition to the usual source list "where necessary to foster the policy and protect the rights secured by" the fair cross-section guarantee. 28 U.S.C. § 1863(b)(2); 28 U.S.C. § 1861.

A substantial failure under the Act does not require Defendant to show prejudice. On the other hand it must be more than a mere technical violation. Congress left it to the courts to

determine whether a "substantial" violation exists. *Green, supra*, at pp. 68-69. Whether the violation is substantial is measured against the underlying principles of the Act. *Id*. at 73. Defendant maintains the chronic under representation of African-Americans in this District is a factor which leads to the conclusion that there is a substantial violation of the Act in this District , such that the Court should consider additional utilizing additional remedies provided in the Act.

For all the above reasons, Defendant requests that the Court (1) dismiss the indictment, or (2) stay the proceedings while the District Court corrects the problem, and/or (3) adjourn the case to allow investigation and analysis of the current jury wheel created under the present Administrative Order.

Dated: January 9, 2010

s/John Minock (P24626)
Attorney for Defendant
339 E. Liberty, Suite 200
Ann Arbor, Michigan 48104
734-668-2200; fax 734-668-0416
jminock@cramerminock.com

s/Edward C. Wishnow (P22472
Attorney for Defendant
240 Daines St.
Birmingham, MI 48009
248-258-1991
edwishnow@aol.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**
                Plaintiff,                Case No. 09-20025-04

v

                                          Hon. Avern Cohn

**SAMUEL L. RIDDLE, JR.**,
                Defendant.
_____

### CERTIFICATE OF SERVICE

      I hereby certify that on January 9, 2010, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the attorneys of record.

                                        s/John Minock (P24626)
                                        Attorney for Defendant
                                        339 E. Liberty, Suite 200
                                        Ann Arbor, Michigan 48104
                                        734-668-2200; fax 734-668-0416
                                        jminock@cramerminock.com